## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| DR. MARY ANN MANOS,  )<br>  )<br>   Plaintiff,  )<br>  )<br> v.  )<br>  )<br> BOARD OF EDUCATION OF VILLA )<br> GROVE COMMUNITY UNIT  )<br> SCHOOL DISTRICT #302, JIM  )<br> CLARK, JIM KESTNER, CAROL  )<br> EZELL, KERRY CHEELY,  )<br> CASSANDRA EVERSOLE-GUNTER, )<br> CHARLES MITSDARFER, and  )<br> TIMOTHY SPANNAGEL,  )<br>  )<br>   Defendants.  )  | No. 2:15-CV-2220 |

### OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

In July 2015, Defendant Board of Education of Villa Grove Community Unit School District #302, comprised of Defendants Jim Clark, Jim Kestner, Carol Ezell, Kerry Cheely, Cassandra Eversole-Gunter, Charles Mitsdarfer, and Timothy Spannagel, terminated Plaintiff Dr. Mary Ann Manos from her position as Superintendent.  Plaintiff filed suit alleging Defendants deprived her of a property interest in her employment and a liberty interest

in her occupation in violation of the Fourteenth Amendment of the U.S. Constitution and discriminated against her because of her gender in violation of Title VII of the Civil Rights Act of 1964 (Counts I, II, and VII). Plaintiff also brought state law claims for breach of contract, intentional infliction of emotional distress, defamation per se, and trespass to chattels (Counts III, IV, V, and VI).

The parties have filed cross-motions for summary judgment. Plaintiff seeks summary judgment on the property and liberty interest claims, Counts I and II. Defendants seek summary judgment on all claims.

Plaintiff's Motion for Partial Summary Judgment (d/e 38) is DENIED. Defendants' Motion for Summary Judgment (d/e 39) is GRANTED IN PART and DENIED IN PART. Genuine issues of material fact preclude summary judgment on Counts I, II, III, and VI. The Court finds, however, that the individual Defendants are entitled to qualified immunity on Counts I and II. Defendants are awarded summary judgment on Counts IV, V, and VII.

# I. FACTS

In 2012, the Villa Grove Community Unit School District

#302 hired Plaintiff to serve as Superintendent under a three-year

employment contract (Contract) beginning July 1, 2013 through

June 30, 2016.  Paragraph 11 of the Contract provided the

following regarding discharge:

> 11.  **Discharge For Cause.**  Throughout the term of this
> Contract, the Superintendent shall be subject to
> discharge for just cause provided, however, the Board
> shall not arbitrarily or capriciously call for dismissal and
> the Superintendent shall have the right to service of
> written charges, notice of hearing and a hearing before
> the Board.  If the Superintendent chooses to be
> accompanied by counsel at such hearing, the
> Superintendent shall pay all such personal expenses.
> Failure to comply with the terms and conditions of this
> Contract shall also be sufficient cause for purposes of
> discharge as provided in this Contract.

Plaintiff began her term as Superintendent on July 1, 2013.

Plaintiff also served as the high school principal for the 2013-2014

school year for additional pay.

Plaintiff's salary as Superintendent was $115,000 per year,

which was less than her predecessor, Dr. Steven Poznic, earned.

The parties do not indicate how much Dr. Poznic earned.  The

parties agree, however, that Dr. Poznic was a longstanding District

employee who received a retirement incentive that increased his salary prior to retirement. The interim Superintendent through June 2017, Mr. Norm Tracy, who was hired after Plaintiff's termination, earned $70,000 per year.

In early 2014, the Board evaluated Plaintiff's performance to date, and the evaluations were universally positive. In March 2014, the District approved the extension of Plaintiff's contract by one year, through June 30, 2017.

Defendants assert, and Plaintiff disputes, that Board members began to hear complaints from staff about the extension of Plaintiff's contract.[1] Board Member Jim Clark commenced an investigation regarding the allegations. Clark interviewed several staff members and purportedly received negative feedback about Plaintiff.

---

[1] Plaintiff objects to the admission of statements made by individuals to individual Board members as hearsay. However, the Court considers the statements not for their truth but to show their effect on the listener and to explain the steps the listener took next. See United State v. Robinzine, 80 F. 3d 246, 252 (7th Cir. 1996); Vallabhapurapu v. First Nat'l Bank of Chi., 998 F. Supp. 906, 909 n.3 (1998) (finding that the plaintiff's subordinates' statements to the plaintiff's supervisor were not introduced for their truth but to show the effect of the statements on the supervisor's beliefs for purposes of the Court's evaluation of the plaintiff's employment discrimination claim).

In June 2014, Clark shared his findings with the Board. At a special Board meeting on July 10, 2014, the Board provided Plaintiff with a letter outlining the Board's concerns. The concerns included staff complaints about Plaintiff, as well as five instances when the Board felt misled by Plaintiff. (Some of these concerns are the same as the ones raised in support of Plaintiff's termination.) The letter included a section titled, "Board Expectations," that outlined the Board's expectations for Plaintiff and included changes in how she should handle matters. In response, Plaintiff stated that the issues were not her issues but rather blamed the District's staff. She also issued a written rebuttal and told the Board that she believed the letter violated Board policies. Plaintiff was not provided with the names of the individuals who were making allegations against her.

In October 2014, the district bookkeeper, Shirley Badman, and the assistant bookkeeper, Chris Mayhall, met with Board President Steve Douglas and Board member Clark about concerns they had about the District's finances, morale in the District, and whether Plaintiff was following auditor procedures. In December

2014, more individuals purportedly spoke to Board members about additional concerns with Plaintiff.

In February 2015, Clark met with Plaintiff to share the concerns staff members were raising, although Plaintiff asserts that Clark did not address any specific complaints with Plaintiff. Defendants contend that Board members continued to receive complaints about Plaintiff from staff and parents.

In April 2015, Plaintiff's Contract was amended to provide Plaintiff with five additional vacation days per year. The remaining terms of the Contract remained in full force and effect.

On May 4, 2015, Clark became President of the School Board, replacing outgoing President, Steve Douglas. On or about June 18, 2015, Clark scheduled a closed-session meeting for June 23, 2015 and directed Plaintiff to attend. According to Plaintiff, Clark did not advise Plaintiff of the topic of the meeting. Plaintiff told Clark she could not attend because she had outpatient surgery scheduled for June 22, 2015.

On June 23, 2015, Clark emailed Plaintiff a letter stating that Clark would, at that evening's special Board meeting, "recommend to the Board of Education that [Plaintiff] be dismissed as

Superintendent . . . and for approval of [his] decision to place [Plaintiff] on paid suspension pending a formal dismissal hearing." By way of the letter, Clark placed Plaintiff on suspension with pay while the Board considered her dismissal. Clark directed Plaintiff to turn over all District property, remain off school property, have no contact with District employees, and not discuss her employment status or any District matter with any staff member or member of the public.

Clark attached to the letter a Bill of Particulars containing 33 allegations (really 32 allegations because there is no number 3) against Plaintiff. The Bill of Particulars included allegations that Plaintiff failed to accurately prepare the annual budget and was fiscally irresponsible regarding several items, including the purchase of weight lifting equipment, air conditioning improvements, Rural Education Achievement Grant Expenditures, and Qualified Zone Academy Bonds.

In the letter, Clark stated that he intended to ask the Board to adopt the charges as the basis of Plaintiff's suspension with pay and to set the matter for a formal dismissal hearing before the Board. The letter also advised Plaintiff that she "may appear at the

Board of Education to answer the charges against [her] and may have counsel present. At the hearing, the Board of Education shall consider [Clark's] recommendation to dismiss [Plaintiff] from [her] position of employment."

Defendants note that Plaintiff testified at her deposition that she responded to the Bill of Particulars. The Court was unable to find the response in the summary judgment record. Plaintiff states, in her Reply (d/e 47), that there is no evidence that Plaintiff's attorney submitted a response to the Board or to Clark or that the Board considered any such response by Plaintiff during the hearing.

Plaintiff's attorney, Gerald Smith, attended the June 23, 2015 special meeting. At the meeting, the Board discussed concerns about the District's finances and Plaintiff's relationship with the Board and staff. The Board decided to proceed with the suspension of Plaintiff with pay and a hearing to determine if she should remain employed as Superintendent. During the closed session of the hearing, the Board Secretary wrote that the new superintendent's start date would be "the day after [Plaintiff] is terminated."

On June 25, 2015, Smith notified the attorney for the School Board, Christopher Miller, that many of the allegations in the Bill of Particulars were vague and lacked sufficient detail to provide a defense. Smith also stated that he would request a continuance at the conclusion of the Board's evidence in order to prepare Plaintiff's response and/or defense to each allegation presented.

Plaintiff's discharge hearing commenced on July 13, 2013. Immediately prior to the hearing, Plaintiff and her attorney received 27 separate exhibits the Board's attorney planned to present during the hearing, which amounted to over 112 pages of evidence.

At the beginning of the hearing, Clark read a statement that Plaintiff would be provided an opportunity to present evidence and all witnesses on her behalf following the presentation of the Board's evidence:

> Before the Board can determine whether Mary Ann Manos has, in fact, engaged in conduct that constitutes just cause to terminate her employment contract, it must hear the evidence.
>
> This hearing is designed to protect her due process rights regarding the presentation of that evidence.

* * *

To begin these proceedings, Mr. Miller will present the charges against Mary Ann Manos and then present information and evidence supporting those charges in the form of written documents and the testimony of witnesses. The employee will be given an opportunity to cross-examine any witnesses presented and to challenge any of the written evidence entered.

Following the presentation of just cause for dismissal, the employee will have an opportunity to make a case against such recommended action. The employee may present evidence of her own, oral or written, and may call witnesses to testify. The Board will be given an opportunity to cross-examine any witnesses presented by the employee and to challenge any of the written evidence entered.

Very early in the proceedings Plaintiff's attorney, Smith, objected to the Board's attorney calling witnesses about whom Plaintiff and Smith knew nothing. Smith also objected to the evidence not being disclosed until immediately prior to the hearing.

Miller, the Board's attorney, spent over six hours presenting 12 witnesses, including Clark, and elicited testimony from all of the members of the Board. Plaintiff asserts, but Defendants dispute, that most of the Board's evidence consisted of evidence Plaintiff was learning for the first time. Plaintiff's attorney, Mr. Smith, cross-examined the witnesses.

The Board's attorney concluded the presentation of evidence at approximately 12:30 a.m. on July 14, 2015. The following exchange occurred:

> MR. MILLER: So, I have got no closing statement; we will rest on the testimony and the exhibits. The Board is going to deliberate. Do you have anything else to present?

> MR. SMITH: Well, as a closing statement, I don't think any of the evidence that was presented here really indicates that there was any intent on her part to deceive or defraud.

After making a closing statement, Mr. Smith then stated:

> MR. SMITH: * * * The fact that we didn't get access to any of this information until tonight as it was being presented, we didn't have an opportunity to prepare an accurate or an adequate defense, so there are due process issues that will be addressed at a later time, too. We respect your time and we won't hang on any longer. We will let you deliberate. I bet there's no one downstairs anymore, but we will be downstairs.

> MR. MILLER: Thank you.

> MR. CLARK: Thank you.

> MR. SMITH: There is one thing. I would like to request from the Board a continuation or a continuance so that we can have adequate time to digest this and to prepare a defense.

> MR. MILLER: Until when?

> MR. SMITH: One week would be fine.

MR. MILLER:  We will discuss it.  Well, I want on the record, what is it that you lack?

MR. SMITH: We did not have any time—

MR. MILLER:  Well, we understand that, but how did that prevent you from having due process?

MR. SMITH:  We did not have any time to prepare a defense.  We didn't know the actual—and of the evidence that was going to be presented, very little of the evidence, the details, the—

MR. MILLER: You got the Bill of Particulars, right?

MR. SMITH:  The Bill of Particulars were weak.

MR. MILLER:  You are not entitled to the Board's evidence as a matter of –well, we will litigate that.

MR. SMITH:  Yeah.  Thank you.

MR. CLARK:  Thank you.

At 2:04 a.m. on July 14, 2015, the Board unanimously recommended that Plaintiff be terminated for cause.  The Board adopted a "Resolution Reference the Discharge for Just Cause of Mary Ann Manos" (Discharge Resolution) which contained 28 paragraphs supporting discharge.  Paragraphs 27 and 28 alleged grounds that had not been included in the Bill of Particulars: that Plaintiff failed to notify the Board in a timely manner of the

District's obligations under Section 9 of the Prevailing Wage Act and violated the directives given to her on June 23, 2015 that she not have contact with any member of the public by speaking with another District employee and the local media.

The News-Gazette published an article that was posted on the newspaper's website on July 14, 2015. The article contained a link to a PDF of the Discharge Resolution specifying the Board's complaints about Plaintiff.

Plaintiff claims she has been unable to find employment in her profession as a result of the information released by the Board regarding her termination. Plaintiff testified she applied for 171 professional positions for which she was qualified. She has had two interviews but was not hired for either position.

On August 5, 2015, Plaintiff filed a complaint with the Illinois Department of Human Rights that was cross-filed with the Equal Employment Opportunity Commission (EEOC). Plaintiff alleged that the School District discriminated against her because of her age, disability, and gender. Plaintiff asserted that she was treated differently than her similarly situated co-workers. Plaintiff also asserted that other individuals who were not members of Plaintiff's

protected class with similar contributions and achievements were not terminated under similar circumstances by the School District. On April 29, 2016, the EEOC issued a Right to Sue letter.

In the summary judgment briefing, Plaintiff has presented evidence to refute what she deems are false accusations against her. For example, she has submitted the report of Roger Stone, who is a certified public accountant and certified fraud examiner. In Mr. Stone's opinion, he concludes that Plaintiff handled the budget for the School District in an appropriate manner, appropriately informed the Board of the budget and other financial matters on a timely basis, and handled various matters, including the weight lifting equipment, air conditioning improvements, Rural Education Achievement Grant Expenditures, and Qualified Zone Academy Bonds appropriately.

Finally, one of Plaintiff's claims is a claim for trespass to chattels. Following Plaintiff's suspension, one or more USB drives were found in Plaintiff's desk. School Principal Steve Killion reviewed the USB drives to ensure that they did not contain student or confidential information. The USB drives were returned to Plaintiff the night she was terminated.

Plaintiff testified that the USB drives contained pictures, Plaintiff's resume, her vitae, articles she had written, and Word documents that had value only to her. Many files were deleted from the USB drives but Plaintiff's attorney "had the ability to recover any files that had been deleted." Manos Dep. at 62 (July 29, 2016) (d/e 41-2). Plaintiff noticed three documents were altered in that all of her personal references were removed from her vitae and resume. Pictures and videos were also missing, but she did not know which ones, other than a video of the birth of her first grandchild, which was recouped. The pictures and videos were not stored in any other location.

## II. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). No genuine issue of material fact exists if a reasonable jury could not

find in favor of the nonmoving party.  Brewer v. Bd. of Trs. of the Univ. of Ill., 479 F.3d 908, 915 (7th Cir. 2007).  When ruling on a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor.  Blasius v. Angel Auto., Inc., 839 F.3d 639, 644 (7th Cir. 2016).

In this case, the parties filed cross-motions for summary judgment.  Therefore, this Court must view all facts and draw all reasonable inferences in the light most favorable to the Plaintiff when reviewing Defendants' Motion and in the light most favorable to the Defendants when reviewing Plaintiff's Motion.  See Gazarkiewicz v. Town of Kingsford Heights, Ind., 359 F.3d 933, 939 (7th Cir. 2004).

### III. ANALYSIS

### A.    The Motions for Summary Judgment on Count I are Denied

In Count I, brought pursuant to 42 U.S.C. § 1983, Plaintiff alleges that she was denied her right to receive a fair termination hearing because Defendants did not allow her adequate notice of the charges or a fair opportunity to be heard, including the

opportunity to present evidence, call witnesses, and otherwise testify on her own behalf.

The Due Process Clause of the Fourteenth Amendment prohibits a State from depriving any person of "life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. To succeed on her claim, Plaintiff must prove that a person acting under color of law deprived her of a cognizable property interest without due process of law. See Hudson v. City of Chi., 374 F.3d 554, 559 (7th Cir. 2004). The parties do not appear to dispute, for purposes of summary judgment, that Plaintiff had a cognizable property interest in her employment as Superintendent because she could only be fired for good cause. Gilbert v. Homar, 520 U.S. 924, 928-29 (1997) (noting that a public employee who can only be fired for good cause has a constitutionally protected interest in her tenure and cannot be terminated without due process).

Due process requires the opportunity to be heard at a meaningful time and in a meaningful manner. See Carmody v. Bd. of Trs. of Univ. of Ill., 747 F.3d 470, 474 (7th Cir. 2014). Generally, a court determines the process due and when the process is due by balancing the three factors set forth in Mathews

v. Eldridge, 424 U.S. 319, 335 (1976): (1) the private interest at stake; (2) the risk of erroneous deprivation and the value, if any, of additional safeguards; and (3) the government's countervailing interests.   Due process "is flexible and requires only such procedural protections as the particular situation demands." Riano v. McDonald, 833 F.3d 830, 834 (7th Cir. 2016) (citation and quotation marks omitted).  While the basic rights guaranteed by constitutional due process are notice and an opportunity to be heard, more elaborate procedural rights, such as the right to present evidence, the right to confront adverse witnesses, and the right to be represented by counsel, may apply in cases where vital private interests are at stake.  Simpson v. Brown Cnty., 860 F.3d 1001, 1008 (7th Cir. 2017).

In addition, the extent and nature of the process due prior to termination depends on the adequacy of any available post-termination remedy that was available.  Carmody, 747 F.3d at 474. When a public employee has a constitutionally protected interest in her tenure and has a full opportunity to contest her termination in a post-termination hearing, she need only be provided with (1) oral or written notice of the charges; (2) an explanation of the

employer's evidence; and (3) an opportunity for the employee to tell her side of the story prior to the termination.  Id. at 475.  Even where an employee is afforded a post-termination hearing, "a meaningful opportunity to be heard before the employer decides on termination is a critical protection."  Carmody, 747 F.3d at 475 (recognizing that a post-termination opportunity to change an employer's mind is less meaningful).  "The general constitutional standard is that an employee with a property interest is entitled to notice of the employer's reasons and a meaningful opportunity to respond before the employer decides to terminate the employment."  Id. at 476 (emphasis in original).

Defendants argue that Plaintiff had a post-termination remedy available to her and, therefore, she was only entitled to notice of the charges, an explanation of the Board's evidence, and an opportunity to tell her side of the story, which Defendants claim Plaintiff was afforded.  The Court disagrees with Defendants' assertion that Plaintiff had a post-termination remedy available to her that provided her a full opportunity to contest her termination.

Defendants argue that a common law writ of certiorari provides an adequate post-termination remedy.[2]  A common law writ of certiorari is a means by which a party can appeal or obtain limited review over an action by a court or other tribunal exercising quasi-judicial functions.  <u>Hartley v. Will Cnty. Bd. of Review</u>, 106 Ill. App. 3d 950, 954 (1982).  While some courts have found that the common law writ of certiorari constitutes an adequate post-termination remedy in an employment termination case (<u>see</u> <u>Fostiak v. Bryon Cmty. Unit Sch. Dist. 226</u>, No. 11 C 50231, 2012 WL 6727535, at *2 (N.D. Ill. Dec. 27, 2012)), this Court disagrees.

Review on a writ of certiorari is restricted to the record. <u>Kasak v. Vill. of Bedford Park</u>, 552 F. Supp. 2d 787, 793 (N.D. Ill. 2008).  Therefore, such a procedure would not have provided Plaintiff the opportunity to refute the charges.  In addition, Plaintiff had a present entitlement to her position, and a writ of certiorari does not meet the element of promptness.  See, <u>e.g.</u>, <u>Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205</u>, 389 F.3d 685,

_____

[2] Plaintiff was not entitled to review under the Illinois Administrative Review Law.  Pursuant to 105 ILCS 5/10-23.8, a Superintendent, by accepting a multi-year contract, waives all rights granted under Sections 24-11 through 24-16 of the School Code, which includes the provision providing for judicial review.  <u>See</u> 105 ILCS 5/24-16.

692 (7th Cir. 2004) (concluding that a breach of contract action was not an adequate post-termination remedy for a superintendent who was terminated after a limited pre-termination hearing because he had a present entitlement to the position and a breach of contract action did not satisfy the requirement of promptness).

Even if Plaintiff were afforded a post-termination hearing by way of a writ of certiorari, disputed facts preclude the Court from finding that Plaintiff had a meaningful opportunity to respond before the Board terminated her employment. Taking the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, Defendants purported to give Plaintiff an opportunity to respond but that opportunity was illusory. At the conclusion of the Board's evidence, the Board's attorney indicated that they Board would deliberate, and then asked Plaintiff attorney if he had "anything else to present." It was approximately 12:30 a.m. and the Board's attorney had presented approximately six hours of witness testimony. Plaintiff's attorney requested a continuance before and after the hearing, and that request was never specifically denied. The parties also dispute whether Plaintiff responded in writing to the charges. Finally, Plaintiff has pointed

to evidence suggesting that the Board had made its decision even before the hearing, such as the reference to when the new superintendent would begin working.  See, e.g., Ryan v. Ill. Dep't of Children & Family Servs., 185 F. 3d 751, 72 (7th Cir. 1999) ("A plaintiff who can introduce evidence that the decision has already been made and any hearing would be a sham is entitled to go forward with a procedural due process claim.").

Plaintiff also moves for summary judgment, but genuine issues of material fact preclude summary judgment in Plaintiff's favor as well.  Viewing the facts in the light most favorable to Defendants and drawing all reasonable inferences in their favor, Defendants did afford Plaintiff a meaningful opportunity to respond to the charges. Moreover, Defendants assert that the reference to a new Superintendent's start date was conditional and simply referred to a plan of action if the Board terminated Plaintiff.

Defendants also argue that the Contract set forth all of the process Plaintiff was due--notice and a hearing before the Board— and that Plaintiff received such process.  See Batagiannis v. W. Lafayette Cmty. Sch. Corp., 454 F.3d 738, 741 (7th Cir. 2006) (noting that parties to a contract can waive "entitlements or

negotiate in advance the details of the hearings they will receive"). However, Defendants seem to agree that the pre-termination hearing intended by the Contract included the opportunity for Plaintiff to present her own witnesses and evidence. See Defs. Mot. at 41 (arguing that Plaintiff was provided all of the process due under the Contract where she was served with written charges and was provided the opportunity to cross-examine witnesses, present her own witnesses and evidence, and present a closing argument). Issues of fact remain whether Plaintiff was afforded the opportunity to present her own witnesses and evidence.

Defendants assert that, because Plaintiff failed to offer any testimony or evidence at the close of the hearing, Plaintiff "bowed out" of the hearing and waived her right to any further process. Defs. Resp. at 28 (d/e 43); Defs. Mot. at 42 (arguing that Plaintiff's decision not to testify or prepare witnesses foreclosed her due process claim). If a terminated employee does not avail herself to the pre-termination hearing, she forfeits her right to complain that the hearing was inadequate. Baird, 389 F. 3d at 694-95; see also, e.g., Carmody, 747 F.3d at 479 (finding that the plaintiff's "decision to bow out of the post-termination hearing" foreclosed

any due process claim premised on the hearing).  In this case, however, Plaintiff did not forfeit her due process claim.  Her attorney objected before the hearing that Plaintiff was not provided sufficient detail to prepare a defense.  During the hearing, counsel objected to the calling of witnesses he did not know anything about and evidence he had not had the chance to review.   At the conclusion of the hearing, counsel requested a continuance to prepare a defense.  Plaintiff did not forfeit her due process claim.

Plaintiff asserts that she is entitled to summary judgment because the Defendants were not impartial and she was not afforded a hearing before a fair tribunal.  According to Plaintiff, several Board members had determined, prior to the termination hearing, that Plaintiff should be dismissed.  Plaintiff points to Clark's correspondence to Plaintiff on June 23, 2015, wherein he states that he will be requesting that Plaintiff be dismissed from employment.  She also points to the notation at the suspension hearing that the new superintendent's start date would be the day after Plaintiff was terminated.

Plaintiff also asserts that several Board members were openly violating District policies that relate to communications with staff,

including the policy that Board members must channel communications through the Superintendent. Plaintiff further asserts that the Board members testified under oath as witnesses at the hearing and then issued a determination based in part on their own testimony. Finally, Plaintiff challenges Clark's role in the investigation of the matter and his ability to judge the matter fairly.

A basic requirement of due process is a fair trial before a fair tribunal. <u>Withrow v. Larkin</u>, 421 U.S. 35, 46 (1975). It is presumed that those serving as adjudicators will act in good faith, honestly, and with integrity. <u>Head v. Chi. Sch. Reform Bd. of Trs.</u>, 225 F.3d 794, 804 (7th Cir. 2000). To overcome this presumption, Plaintiff must come forward with substantial evidence of actual or potential bias, such as evidence of a pecuniary interest, personal animosity toward Plaintiff, or actual prejudgment of Plaintiff's case. <u>Id.</u> Viewing the facts in the light most favorable to Defendants, the Court finds that Plaintiff has not shown that she is entitled to summary judgment on this ground.

Familiarity with or involvement with the matter under consideration is not adequate, by itself, to overcome the presumption. <u>Id.</u> Moreover, the mere fact that Clark, as President

of the Board, commenced an action to terminate the contract does not, without more, mandate a finding that the Board was not impartial.  See e.g. Woods-Clendening v. Bd. of Educ., No. 02 C 3578, 2002 WL 1732921, at *3 (N.D. Ill. July 25, 2002) (finding that "the mere fact that the Board commenced an action to terminate plaintiff's contract, without more, does not mandate a finding of impartiality").  Plaintiff may be able to elicit facts at trial that, as a whole, support a finding that the Board was not impartial.  However, she is not entitled to summary judgment on this ground.

## B.   The Motions for Summary Judgment on Count II are Denied

In Count II, brought pursuant to 42 U.S.C. § 1983, Plaintiff alleges that she was stigmatized by the statements made against her, which resulted in damage to her professional reputation and loss of other employment opportunities.  Plaintiff claims that Defendants falsely stated that Plaintiff:

- had been "careless," "negligent," and acted in a "fiscally irresponsible fashion"

- "deceived the Board" on multiple occasions

- "undermined the integrity of the educational process"

- "threatened, intimidated, and coerced staff members"

- debased her authority, integrity, and standing as Superintendent of the District"

- "expressed paranoia [sic] delusions about her employment; and

- exposed the District to liability under State and Federal disability education laws.

These statements appear in the Discharge Resolution.

Because an individual has no liberty interest in her reputation, simple defamation by the government does not deprive an individual of liberty within the meaning of the Due Process Clause. See McMahon v. Kindlarski, 512 F.3d 983, 988 (7th Cir. 2008). However, the concept of liberty includes "the liberty to follow a trade, profession[,] or other calling." Pieva v. Norquist, 195 F.3d 905, 915 (7th Cir. 1999) (quotation marks and citations omitted). "When the government removes someone from a position for stated reasons likely to make him all but unemployable in the future, by marking him as one who lost his job because of dishonesty or other job-related moral turpitude, the consequences are akin to

depriving him of the ability to follow his chosen trade, and due process must be provided." Id. (quotation marks and citations omitted); see also Strasburger v. Bd. of Educ., Hardin Cnty. Cmty. Unit Sch. Dist. No. 1, 143 F.3d 351, 356 (7th Cir. 1998) (recognizing that government employees have "a liberty interest in not being discharged from their employment while being defamed such that they cannot get other government employment").

Therefore, the Due Process Clause is implicated when the government, while terminating an employee, (1) makes a charge against the employee that might seriously damage her standing or association in the community or (2) imposes on her a stigma or other disability that forecloses her freedom to take advantage of other employment opportunities.[3] Bd. of Regents v. Roth, 408 U.S. 564, 573 (1972); Covell v. Menkis, 595 F.3d 673, 677 (7th Cir. 2010). In such cases, due process requires the individual be given

---

[3] The "stigma or other disability" type of claim has generally been found where the government imposes a legal barrier to future employment, such as denial of admission to the bar, disqualification from all government employment, or sending adverse information to a professional licensing agency. Adams v. Walker, 492 F.2d 1003, 1009 (7th Cir.1974). Plaintiff has presented no evidence that her claimed inability to find employment was a result of this type of stigma or disability imposed on her by Defendants.

an opportunity to refute the charges.  <u>Roth</u>, 408 U.S. at 573 (1972).

To prevail on a liberty cause of action, a plaintiff must show the following: that (1) she was stigmatized by the defendant's conduct; (2) the stigmatizing information was publicly disclosed; and (3) she suffered a tangible loss of other employment opportunities as a result of the public disclosure.  <u>Covell</u>, 595 F.3d at 677-78.  In addition, the stigmatizing information must be disclosed incident to the change in employment status.  <u>See, e.g.</u>, <u>Paul v. Davis</u>, 424 U.S. 693, 710 (1976) (providing that "the defamation had to occur in the course of the termination of employment").

Sufficiently defamatory statements are those that impugn an employee's moral character or imply dishonesty or other job-related moral turpitude.  <u>See</u> <u>Pieva</u>, 195 F.3d at 916; <u>Lashbrook v. Oerkfitz</u>, 65 F.3d 1339, 1348-49 (7th Cir. 1995) (listing charges of immorality, dishonesty, alcoholism, disloyalty, Communism, or subversive acts as the sort of charges that infringe an employer's liberty when accompanied by termination).  Statements of opinion do not constitute defamatory statements so long as the statements

do not imply false facts.  Strasburger, 143 F.3d at 356 (the statements must be false assertions of fact and must "come from the mouth of a public official"). Because the remedy for a liberty claim is a name-clearing hearing, the statements must be of a kind that the employee could refute and clear her name.  Id.; see also Endicott v. Huddleston, 644 F.2d 1208, 1216 (7th Cir. 1980) (when the county board declined to rehire the plaintiff and articulated charges of dishonesty and immorality as the reason, the plaintiff had a constitutional right to notice and a hearing that afforded him the opportunity to clear his name).

Plaintiff moves for summary judgment, but she has not presented evidence showing that she is entitled to judgment as a matter of law.  For example, Plaintiff has failed to point to evidence that Defendants distributed the Discharge Resolution to the media. See, e.g., Covell, 595 F.3d at 678 (7th Cir. 2010) (providing that the plaintiff must prove that a defendant disseminated the stigmatizing information to the public).  Therefore, Plaintiff's motion for summary judgment on Count II is denied.

Defendants move for summary judgment on several grounds. Defendants first argue that the statements are not defamatory

because they are true. However, Plaintiff has presented evidence suggesting that the assertions are false, including the report of Roger Stone who opined that Plaintiff handled the budget and financial matters for the School District in an appropriate manner. Although Defendants claim that Mr. Stone's report is based on an inadequate and incomplete review of the record and that Mr. Stone has little experience with the programs at issue, that argument goes to the weight of the evidence, which the Court will not evaluate on summary judgment. See, e.g., George v. Kraft Foods Global, Inc., 641 F.3d 786, 799 (7th Cir. 2011) (finding the district court improperly weighed the evidence by deciding to give the witness's opinion less weight "because of his inexperience with large plans"). Therefore, genuine issues of material fact preclude summary judgment on this ground.

Defendants next argue that the statements that Plaintiff was negligent, incompetent, threatening, or paranoid (Sec. Am. Compl. ¶ 66(a), (d), (f) and (g)) are not stigmatizing as a matter of law. Defendants do not specifically challenge the remaining statements. The Court agrees in part.

Charges of incompetence, malfeasance of office, mismanagement, and failure to meet a specific level of management are all insufficient to implicate a liberty interest. <u>See</u> <u>Munson v Friske</u>, 754 F.2d 683, 693 (7th Cir. 1985) ("Liberty is not infringed by a label of incompetence or a failure to meet a specific level of management skills, which would only affect one's professional life and force one down a few notches in the professional hierarchy."); <u>Adams</u>, 492 F.2d at 1008. Therefore, the statements that Plaintiff had been "careless," "negligent," "acted in a fiscally irresponsible manner," and exposed the District to liability under State and Federal disability education laws, which are essentially charges of incompetence and mismanagement, are not sufficiently stigmatizing.

The statement that Plaintiff "threatened, intimidated, and coerced staff members," however, could be sufficiently stigmatizing to someone in the education administration profession. <u>See</u>, <u>e.g.</u>, <u>Bryant v. Gardner</u>, 545 F. Supp. 2d 791, 801 (N.D. Ill. 2008) (determining, on a motion to dismiss that statements that the plaintiff coach mistreated players and fellow coaches were sufficiently stigmatizing to someone in the coaching profession). In

addition, the statement that Plaintiff "expressed paranoia [sic] delusions about her employment" could be sufficiently stigmatizing because it calls into question Plaintiff's mental stability.

Defendants next argue that Plaintiff did not suffer a tangible loss of employment opportunity. To establish a tangible loss of employment opportunity, Plaintiff must show that the publicly stated reason for the discharge effectively blacklisted her from employment in comparable jobs and made it virtually impossible for her to find new employment in her chosen filed. Wood v. Peoria Sch. Dist. 150, 162 F.Supp.3d 786, 794 (C.D. Ill. 2016).

Plaintiff testified that she has applied for 171 professional positions for which she was qualified. She has had two interviews but was not hired for either position. She claims that during one of the interviews, a business professor brought up the newspaper and internet accounts of the Villa Grove situation. As of July 10, 2016, Plaintiff had accepted a minimum wage position at Kohl's stocking the shelves overnight. This evidence, taken in the light most favorable to Plaintiff, would permit a reasonable trier of fact to find that the publicly stated reasons for the discharge are the reason why Plaintiff was not hired by other employers.

For all of these reasons, neither Plaintiff nor Defendants are entitled to summary judgment on Count II.

## C.     The Individual Defendants are Not Entitled to Absolute Immunity But Are Entitled to Qualified Immunity

The individual Defendants argue that they are entitled to absolute and qualified immunity.

The individual Defendants first argue that they are entitled to absolute immunity for their legislative actions.  They assert, without citation to any authority, that the determination of how the termination proceeding would proceed, participation in the hearing, and Plaintiff's termination, are all functions within the Board's legislative capacity.

While all acts taken within the sphere of legislative activity are protected by absolute immunity (see Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998)), termination of an employee is generally not considered a legislative function.  Rateree v. Rockett, 852 F.2d 946, 951 (7th Cir. 1988); Roberson v. Mullins, 29 F.3d 132, 135 n.4 (4th Cir. 1994).  An exception is recognized where the termination is accomplished through traditional legislative functions.  Rateree, 852 F.2d at 950 (7th Cir. 1988) (finding that

the commissioners' budgetary decision to eliminate certain jobs was a legislative act, and the commissioners were entitled to absolute immunity).

The acts complained of here involve the termination of an employee, which is an administrative act.  See Baird, 389 F.3d at 698 (rejecting the Board's argument that they were entitled to absolute legislative immunity absolutely immune for determining the rules and procedures of the hearing, participating in the pre-termination hearing, and deciding to terminate the plaintiff, finding that the issues raised on appeal involved the termination of an employee, which was an administrative act).  Therefore, the Board members have not demonstrated that they are entitled to legislative immunity.

The individual Defendants also argue that they are entitled to absolute judicial immunity because they were members of a quasi-judicial adjudicatory body and acted in a quasi-judicial capacity

In Wood v. Strickland, 420 U.S. 308, 320 (1975), the United States Supreme Court refused to grant judicial immunity to members of a school board that adjudicated violations of school disciplinary regulations.  The Court held that "absolute immunity

would not be justified since it would not sufficiently increase the ability of school officials to exercise their discretion in a forthright manner to warrant the absence of a remedy for students subjected to intentional or otherwise inexcusable deprivations." Id.

Some courts have extended the Wood rationale to school boards that discharge employees. See Stewart v. Baldwin Cnty. Bd. of Educ. 908 F.2d 1499, 1508 (11th Cir. 1990); see also, e.g., Grady v. Bd. of Trs, of N. Ill. Univ., 78 F. Supp. 3d 768, 781 (N.D. Ill. 2015) (finding that judicial immunity did not apply to grievance committee defendants who were not acting in a legislative capacity when they terminated the plaintiff). While the Seventh Circuit has not expressly addressed the issue, the Seventh Circuit did state, in dicta, that a university's judicial officers were likely not entitled to absolute judicial immunity for expelling a student in light of Wood and Cleavinger v. Saxner, 474 U.S. 193, 204-06 (1985) (holding that members of prison disciplinary committees are not entitled to absolute judicial immunity. See Osteen v. Henley, 13 F.3d 221, 224 (7th Cir. 1993). In light of this authority, the Court finds that the individual Defendants have failed to demonstrate that they are entitled to absolute judicial immunity.

The individual Defendants also claim that they are entitled to qualified immunity on Counts I and II. Defendants assert that they provided Plaintiff with notice of the charges, a hearing, and an opportunity to present evidence. According to Defendants, these actions were consistent with the Contract and with the law and cannot be a knowing violation of the law.

Qualified immunity shields government officials from civil damages claims if the officials' actions did not violate clearly established statutory or constitutional rights. Viilo v. Eyre, 547 F.3d 707, 709 (7th Cir. 2008) The Court asks (1) whether the facts as alleged show a violation of a statutory or constitutional right; and (2) whether that right was clearly established. Dibble v. Quinn, 793 F.3d 803, 807 (7th Cir. 2015). The Court may answer the second question first. Id. To be clearly established, a right must be "defined so clearly that every reasonable official would have understood that what he was doing violated that right." Id. at 808. A case directly on point is not necessary, but existing precedent must have placed the question beyond debate. Id. The allegedly violated right must have been established not as a broad

proposition, but in a particularized sense such that the right's contours are clear to a reasonable official.  Id.

Plaintiff bears the burden of defeating Defendants' assertion of qualified immunity, either by identifying a closely analogous case or showing that "the conduct was so egregious that no reasonable person could have believed that it would not violate clearly established rights." Chelios v. Heavener, 520 F.3d 678, 691 (7th Cir. 2008) (quotation marks and citations omitted); see also Abbott v. Sangamon Cnty., Ill., 705 F.3d 706, 724 (7th Cir 2013). Plaintiff has done neither.  See Pl.'s Resp. at 33-34.  Therefore, the individual Defendants are entitled to qualified immunity.

**D.     Defendants Are Not Entitled to Summary Judgment on Count III, Breach of Contract, Because Questions of Fact Remain**

In Count III, Plaintiff alleges that the Board breached the parties' Contract by terminating from her position as Superintendent prior to the end of her term and terminating Plaintiff in an arbitrary, capricious, and unreasonable manner.

To establish a breach of contract, Plaintiff must prove (1) the existence of a valid and enforceable contract; (2) performance by Plaintiff; (3) breach of contract by the Board; and (4) resultant

injury to the Plaintiff.  <u>Burkhart v. Wolf Motors of Naperville, Inc. ex rel. Toyota of Naperville</u>, 2016 IL App (2d) 151053.  Genuine issues of material fact remain whether the Board breached the Contract by discharging Plaintiff.  Therefore, summary judgment on Count III is denied.

**E.    Defendants are Entitled to Summary Judgment on Count IV, Intentional Infliction of Emotional Distress**

In Count IV, Plaintiff alleges that Defendants committed the tort of intentional infliction of emotional distress by wrongfully terminating her Contract and for the statements made in the Discharge Resolution.

To prove her claim of intentional infliction of emotional distress, Plaintiff must demonstrate that (1) Defendants' conduct was extreme and outrageous; (2) Defendants knew there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct caused severe emotional distress. <u>Kolegas v. Heftel Broad. Corp.</u>, 154 Ill. 2d 1, 20 (1992).  Mere insults, indignities, threats, or annoyances do not qualify as extreme and outrageous conduct. <u>Id.</u>  "[T]o qualify as outrageous, the nature of the defendant's conduct must be so extreme as to go

beyond all possible bounds of decency and be regarded as intolerable in a civilized society." Feitmeier v. Feitmeier, 207 Ill. 2d 263, 274 (2003).

Defendants assert they are entitled to summary judgment because the termination of an employee does not meet the standard for the intentional infliction of emotional distress. Plaintiff asserts, without citation to any authority, that Defendants' conduct was extreme and outrageous. Pl.'s Resp. at 36. She asserts that the extreme and outrageous conduct consisted of the Board methodically gathering information about Plaintiff for months from dozens of faculty members and then terminating Plaintiff "in a fashion intentionally orchestrated to publicly humiliate her." Id.

Illinois courts are reluctant to find intentional infliction of emotional distress in the workplace, noting that, if everyday job stresses including the termination of employment could give rise to the cause of action, nearly every employee would have a cause of action. See Heying v. Simonaitis, 126 Ill. App. 3d 157, 166 (1984); Richards v. U.S. Steel, 869 F.3d 557, 567 (7th Cir. 2017) (Illinois law limits recovery to cases where the employer's conduct is "truly

egregious").  Courts will find extreme and outrageous behavior only "where the employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment."  Honaker v. Smith, 256 F.3d 477, 491 (7th Cir. 2001) (citing Illinois cases).  Relevant factors include the degree of power the employer holds over the employee, whether the employer reasonably believed that objective was legitimate, and whether the employer knew the plaintiff was particularly susceptible to emotional distress.  See Honaker, 256 F.3d at 491; Thomas v. Coach Outlet Store, No. 16 C 3950, 2017 WL 386656, at * 4 (N.D. Ill. Jan. 27, 2017).

The Court finds that the conduct here—the investigation and the manner in which Plaintiff was terminated—does not rise to the level of extreme and outrageous required under Illinois law.  An alleged bad faith investigation of an employee is not extreme and outrageous if the employer had a legitimate purpose.  Graham v. Commonwealth Edison Co., 318 Ill. App. 3d 736, 746 (2000). Defendants have pointed to evidence that they had a legitimate purpose—investigating complaints made against Plaintiff.

Moreover, nothing about the manner of Plaintiff's termination constitutes extreme or outrageous conduct under Illinois law. See Brackett v. Galesburg Clinic Ass'n, 293 Ill. App. 3d 867, 870-71 (1997) (summary termination of 44-year employee conducted in violation of policy, the escorting of the employee out of the building without allowing her to collect her belongings, and the statement hinting that the plaintiff was terminated for something "really bad" did not constitute outrageous conduct); Thomas v. Coach Outlet Store, No. 16 C 3950, 2017 WL 386656, at *5 (N.D. Ill. Jan. 27, 2017) (finding that falsely accusing the plaintiff of theft, patting her down, searching her, and terminating her did not support an intentional infliction of emotional distress claim); Fang v. Vill. of Roselle, No. 95 C 5175, 1996 WL 386556 at *3 (N.D. Ill. July 5, 1996) (a wrongful, malicious discharges does not, by itself, constitute outrageous conduct and further noting that most conduct by an employer "short of an attempted coercion into a crime or sexual misconduct" does not constitute outrageous conduct). Therefore, Defendants are entitled to summary judgment on Count IV.

**F.    Defendants are Entitled to Summary Judgment on Count V, Defamation**

In Count V, Plaintiff alleges that Defendants published statements that are defamatory per se in that they inferred that Plaintiff has (a) shown a lack of integrity in the discharge of her employment and (b) has shown a lack of ability in her trade, profession, or business.  Plaintiff does not specifically identify the statements but Plaintiff appears to be referring to the statements in the Discharge Resolution.

The Court finds that the Board and individual Board members are immune from suit based on the alleged defamatory statements.

Illinois law provides that a "local public entity is not liable for injury caused by any action of its employee that is libelous or slanderous[.]"  745 ILCS 10/2-107.  Therefore, the Board is statutorily immune from Plaintiff's claims based on the alleged defamatory statements.  See Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37, 260 F.3d 602, 617 (7th Cir. 2001) (holding that, under 745 ILCS 10/2-107, the school board could not be sued for the allegedly defamatory remarks the Board made about Plaintiff.

The individual Board members are also immune from suit if their allegedly defamatory statements were made within the scope of their official duties.  Id. at 617 (noting that the absolute privilege is afforded to particular officials who should be free to exercise their duties free from the fear of damages suits and finding that principal, superintendent, and school board president were immune from suit for statements that made while acting within the scope of their official duties).  This immunity is not overcome by a showing of malice, improper motivation, or knowledge that the statements are false.  Id. at 618.  In this case, the statements were made in a document issued to Plaintiff upon her termination and set forth the basis for her termination.  Plaintiff has not pointed to any evidence suggesting that the individual Board members were acting in their personal capacities or exceeded the scope of their official duties.  Therefore, Defendants are entitled to summary judgment on Count V.

## G. Defendants are Not Entitled to Summary Judgment on Count VI, Trespass to Chattels

In Count VI, Plaintiff alleges that Defendants intentionally trespassed on Plaintiff's private property by reviewing and deleting files contained within four portable USB drives found in her office. Trespass to chattels is committed by intentionally (1) dispossessing another of a chattel or (2) using or intermeddling with the chattel in possession of another. Sotelo v. Direct Revenue, LLC, 384 F. Supp. 2d 1219, 1229 (N.D. Ill. 2005) (citing RESTATEMENT (SECOND) OF TORTS, § 217).

Defendants argue that they are entitled to summary judgment under the doctrine of de minimis non curat lex, which means, "the law doesn't care about trifles." Mitchell v. JCG Indus., Inc., 745 F.3d 837, 841 (7th Cir. 2014). In support thereof, Defendants cite Sturdy v. Medtrak Educ. Servs, LLC, No. 13-cv-3350, 2014 WL 2727200, at *4 (C.D. Ill. June 16, 2014) (Bruce, J.). In Sturdy, the court found that, even though a plaintiff might generally be able to recover nominal damages for conversion and trespass to chattel, the damages for a single sheet of paper and some toner were so inconsequential that even nominal damages

would not be appropriate.  Sturdy, 2014 WL 2727200, at *4-5

(citing cases) (concluding that "even if sending an unsolicited fax

advertisement can be said to constitute conversion or trespass to

chattels of a single piece of paper and the toner used to print the

fact, the doctrine of de minimis non curat lex bars these claims").

In this case, Defendants argue that the harm in this case is

minimal because Plaintiff's attorney was able to recover the files

allegedly deleted from the USB drives and Plaintiff could not

identify any of the missing pictures.

The Court finds that facts of this case are not similar to cases

involving unsolicited fax advertisements involving a single piece of

paper and toner.  Plaintiff has pointed to evidence that she was

deprived of her digital files for a period of time and certain

photographs are missing.  This type of damage is distinguishable

from a single piece of paper and toner.

The parties do not address whether the data on the USB

drives constitutes tangible personal property.  See Am. Nat'l Ins.

Co. v. Citibank, 543 F.3d 907, 910 (7th Cir. 2008) ("Illinois courts

do not recognize an action for conversion of intangible rights" but

also noting that, for example, the rights involved with commercial

paper merge into the document, which is tangible); <u>Ogbolumani v. Young</u>, 2015 IL App (1st) 141930-U (Ill. App. Ct. Mar. 20, 2015). (unpublished) (finding the plaintiff did not state a claim for trespass to chattel based on digital information contained on a USB drive); <u>Sheridan v. iHeartMedia, Inc.</u>, 255 F. Supp. 3d 767, 781 (N.D. Ill. 2017) (finding that a digital file was not sufficient tangible property for a conversion claim).  The parties shall be prepared to discuss this issue at the Final Pretrial Conference.

Defendants also argue that they are immune from liability under various provisions of the Tort Immunity Act for the intentional infliction of emotional distress, defamation, and trespass to chattels claims but do not specifically tie the specific immunity to the trespass to chattels claim.  Undeveloped arguments are forfeited.  <u>See Judge v. Quinn</u>, 612 F.3d 537, 557 (7th Cir. 2010) (perfunctory arguments are waived), <u>am.</u> 387 F. App'x 629 (2010).  Therefore, Defendants have forfeited the argument at summary judgment but may raise the argument, if necessary, posttrial.

**H.** **Defendants are Entitled to Summary Judgment on Count VII, Gender Discrimination under Title VII**

In Count VII, Plaintiff's Title VII gender discrimination claim, Plaintiff alleges that she was paid substantially less than the previous Superintendent was paid and suffered an adverse action when she was discharged from her employment. She claims that the lower pay and termination were because of her gender.

Defendants assert that they are entitled to summary judgment because (1) Plaintiff failed to raise the pay disparity claim in her charge of discrimination; (2) Plaintiff has no evidence of discrimination; and (3) the claims against the individual defendants must be dismissed because Title VII does not authorize suits against individuals agents of the employer.

Taking the last argument first, the Court finds that the individual Defendants are entitled to summary judgment on Count VII. Plaintiff cannot maintain Title VII claims against the individual defendants. Boss v. Castro, 816 F.3d 910, 914 n.1 (7th Cir. 2016) ("Title VII authorizes suits against the employer as an entity, not against individual agents of the employer.").

The Court also finds that the Board is entitled to summary judgment because Plaintiff has failed to point to any evidence of gender discrimination.

As the Board notes, a plaintiff may not generally bring claims under Title VII that were not included in the charge of discrimination.  <u>Peters v. Renaissance Hotel Operating Co.</u>, 307 F.3d 535, 550 (7th Cir. 2002).  An exception exists, however, if the claim not contained in the charge of discrimination is "like or reasonably related" to the EEOC charge and the claim would reasonable be expected to grow out of an EEOC investigation of the charge.  <u>Id.</u>  The Board asserts that Plaintiff did not include the pay disparity claim in her charge of discrimination.

Even assuming, however, that a pay disparity claim is reasonably related to Plaintiff's claim that she was terminated because of her gender, Plaintiff points to no evidence to support either claim.  In her response to the Board's Motion for Summary Judgment, Plaintiff asserts that she has "pleaded all she needs to plead to sustain this cause of action."  Pl.'s Resp. at 40 (d/e 44).  However, Plaintiff, as the nonmoving party, cannot rest on the allegations in her complaint but must offer support for those

allegations.  See Mosley v. City of Chi., 614 F.3d 391, 400 (7th Cir. 2010).  The Seventh Circuit has described summary judgment as the "'put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.'"  Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005)).

Therefore, to avoid summary judgment, Plaintiff must point to evidence sufficient to permit a reasonable factfinder to conclude that Plaintiff was paid less or terminated because of her gender.  See, e.g., Ortiz v. Werner Enter., Inc., 834 F.3d 760, 765 (7th Cir. 2016) (involving an employment discrimination case under Title VII and discarding the practice of distinguishing between direct and indirect evidence).  The legal standard "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action."  Id.

The McDonnell Douglas framework created by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), remains a method of assessing the evidence in discrimination cases, but it is not the

only way to assess circumstantial evidence of discrimination.
David v. Bd. of Trs, of Cmty. Coll. Dist. No. 508, 846 F.3d 216, 224
(7th Cir. 2017) (but also assessing the evidence cumulatively to
determine whether the evidence permits a reasonable factfinder to
determine that the adverse action was attributable to the plaintiff's
age, race, or sex).  Under the McDonnell Douglas framework,
Plaintiff must first establish a prima facie case by establishing (1)
she was a member of a protected class; (2) she was meeting the
employer's legitimate expectations; (3) she suffered an adverse
employment action; and (4) other similarly situated employees who
were not members of the protected class were treated more
favorably.  See McKinney v. Office of Sheriff of Whitley Cnty., 866
F.3d 803, 807 (7th Cir. 2017).  Once she establishes her prima
facie case, the burden shifts to Defendants to provide a legitimate,
nondiscriminatory reason for the employment decision.  Id.
Plaintiff must then present evidence that Defendants' stated
reason is a pretext for gender discrimination.  Id.

Plaintiff points to no evidence from which a reasonable
factfinder could conclude that Plaintiff was paid less or was
terminated because of her gender.  Additionally, Plaintiff has not

established a prima facie case under <u>McDonnell Douglas</u>, at least with regard to her termination claim. Plaintiff has not identified any similarly-situated male employees who was not terminated under similar circumstances. Moreover, the Board has articulated a legitimate, nondiscrimination reason for why it paid Plaintiff less than her predecessor—because he was a long-standing District employee and received a retirement incentive that increased his salary before retirement—and why the Board terminated Plaintiff— because of deteriorating morale, loss of the Board's trust, financial mismanagement, and mishandling of special education issues. Plaintiff has not pointed to any evidence suggesting that the stated reasons were a pretext for gender discrimination.

For all of these reasons, Defendants are entitled to summary judgment on Count VII.

## IV. CONCLUSION

For the reasons stated, Plaintiff's Motion for Partial Summary Judgment (d/e 38) is DENIED. Defendants' Motion for Summary Judgment (d/e 39) is GRANTED IN PART and DENIED IN PART. Genuine issues of material fact preclude summary judgment on Counts I, II, III, and VI. Defendants are entitled to summary

judgment on Counts IV, V, and VII.  The individual Defendants are entitled to qualified immunity on Counts I and II.  This matter is set for a Final Pretrial Conference on March 2, 2018 at 1:30 p.m. and a Jury Trial on March 20, 2018 at 9:00 a.m. in Courtroom 1 in Springfield before U.S. District Judge Sue E. Myerscough.  This trial date is not a firm date.  The Court sets civil trials on a trailing trial calendar, meaning a civil trial is subject to being continued if criminal trial or a trial in an older civil case is scheduled.  The parties are again advised of their option to consent to the Magistrate Judge, who would be able to give them a firm trial date.

**ENTERED:  December 11, 2017**

**FOR THE COURT:**

*s/Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**